**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**GERARDO BARRAGAN,**

    **Petitioner,**

**v.**                                                      **CASE NO. 6:08-cv-285-Orl-35DAB**

**SECRETARY, DEPARTMENT OF
CORRECTIONS, et al.,**

    **Respondents.**
_____/

## ORDER

This case is before the Court on an amended petition for habeas corpus relief filed by Petitioner pursuant to 28 U.S.C. section 2254 (Doc. No. 11). Respondents filed a response to the amended petition (Doc. No. 13), and Petitioner filed a reply to the response (Doc. No. 20).

Petitioner alleges six claims for relief in his habeas petition: 1) the trial court erred in denying his request for a new trial; 2) trial counsel was ineffective for failing to inform him that he would be subject to impeachment if he testified at trial; 3) trial counsel was ineffective for allowing Petitioner to dress in "county jail clothing" during *voir dire*; 4) trial counsel was ineffective for failing to challenge and preserve for appeal the manner in which the trial court addressed the jury's request to review Deputy Ingram's trial testimony; 5) trial counsel was ineffective for failing to object to the trial court's requiring Petitioner to wear a stun belt during his trial; and 6) the trial court erred by denying Petitioner's motion to suppress his confession.

## I. Procedural History

Petitioner was charged by information with burglary of a dwelling (count one), attempted lewd or lascivious exhibition (count two), and attempted exposure of sexual organs (count three). Prior to trial, the State entered a *nolle prosequi* as to count two, and a jury trial proceeded as to the charges in counts one and three. Count three was redesignated as count two. The jury found Petitioner guilty of both counts, and the trial court subsequently adjudicated Petitioner guilty and sentenced him to imprisonment for a term of fifteen years as to count one and to time-served as to count two. Petitioner filed a direct appeal with the Florida Fifth District Court of Appeal, which affirmed *per curiam*.

Petitioner next filed a motion for reduction of sentence pursuant to Florida Rule of Criminal Procedure 3.800 with the trial court, which was denied. Petitioner did not appeal the denial.

Petitioner then filed a motion for postconviction relief and amendments thereto pursuant to Florida Rule of Criminal Procedure 3.850 with the state trial court, raising seven grounds. The trial court summarily denied claims one, five, and seven and held an evidentiary hearing as to the remaining claims (claims two, three, four, and six). Claim seven alleged that counsel was ineffective for failing to object to the charge of attempted exposure of sexual organs at trial, and the trial court denied the claim as procedurally barred, finding that it should have been raised on direct appeal. After the evidentiary hearing, the trial court denied the remaining claims. Petitioner appealed, and the state appellate court affirmed the denial of claims one through six but reversed as to claim seven. The state appellate court found that claim seven was not procedurally barred, and

2

the case was remanded with instructions that the trial court consider the merits of claim seven. On remand, the trial court found that Petitioner had been convicted of a non-existent crime in count two; therefore, it granted claim seven and vacated the conviction as to count two. The sentence related to that conviction was likewise vacated. Petitioner appealed the trial court's ruling, and the state appellate court affirmed *per curiam*.

## II. Legal Standards

### A. Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Secretary for Dep't. of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005). The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

Under the "contrary to" clause, a federal court may grant the writ if the state

court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

Even if the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable."[1] *Id*.

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

## B.  *Standard for Ineffective Assistance of Counsel*

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense.[2]  *Id*. at 687-88.  A court

---

[1]Whether a state court's decision was an unreasonable application of law must be assessed in light of the record before the state court. *Holland v. Jackson*, 542 U.S. 649, 652 (2004) (*per curiam*); *cf. Bell v. Cone*, 535 U.S. 685, 697 n. 4 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).

[2]In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome

4

must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*. at 689-90. "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989)

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted). Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

### III. Analysis

#### A. Factual Background

Ashley Larson, who was fourteen years old, testified at trial that she went to sleep on May 5, 2000, in her bedroom with her sister Alyssa, who was thirteen years old, and her brother Charlie, who was four years old. Ashley and Alyssa both testified that they saw

---

determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

Petitioner in their bedroom in the early morning hours of May 6, 2000. Ashley hit Petitioner with a stuffed animal, ran out of the room, and started screaming for her grandfather, August Larson, who was also in the residence. A third sister, Amy Larson, got out of bed upon hearing her sister scream and saw Petitioner leaving Ashley's bedroom and then exiting the residence through a sliding glass door.

August Larson was awakened by the disturbance and, in his car, pursued Petitioner, who had fled in a truck, eventually chasing Petitioner to the front gate of the community. A security guard also pursued Petitioner's truck, which stopped at the front gate of the community. Petitioner exited his vehicle and stated that he was sorry and had made a mistake.

Deputy Tanya Ingram testified that Petitioner admitted to her that he had pried open the sliding glass door to the victims' home and entered the young girls' bedroom. Petitioner told her that he did not intend to hurt them but that he wanted to masturbate in front of them.

At trial, however, Petitioner, who was a part-time singer/musician, testified that he had entered the residence only for the purpose of serenading Sheri Larson, the mother of the children mentioned above. Sheri Larson stated that Petitioner cut the lawn at the nursery school where she worked and that she barely knew Petitioner; in fact, she had only spoken with him briefly on three or four occasions.

## B. *Claim One*

Petitioner argues that the trial court erred in denying his request for a new trial on the burglary conviction because the conviction for attempting to expose his sexual organs during the burglary had been vacated. The trial court denied this claim, finding as follows:

6

> The record shows that the Defendant entered the home with the intent to expose his sexual organs. It is not required that he commit the completed offense of exposure of sexual organs so long as he had the fully-formed conscious intent to commit the crime at the time of entry. Therefore, the burglary conviction shall remain valid.

(Appendix XVI at 2.) (Citations omitted).

Section 810.02(1)(a), Florida Statutes provided that, as to offenses committed on or before July 1, 2001, a burglary "means entering or remaining in a dwelling . . . with the intent to commit an offense therein . . . ." In an analogous case, *Miranda v. State*, 648 So. 2d 174, 176-77 (Fla. 3rd DCA 1994), the state appellate court held that"[i]n order to prove the offense of burglary, it was necessary only to show, *inter alia*, that at the time of entry into the building, the defendant had the fully formed intent to commit the offense of criminal mischief-not that the defendant had committed the completed offense of criminal mischief." *See also Conrad v. State,* 977 So. 2d 766, 768 (Fla. 5th DCA 2008) (holding that, "[t]o prove a burglary, the State needs to prove that a defendant entered a dwelling, structure, or conveyance with the intent to commit an offense therein. The State is not required to prove that a defendant actually committed a separate crime.") (citation omitted).

Here, the evidence at trial established that, at the time Petitioner entered the residence, he had the fully-informed intent to commit the offense of exposing his sexual organs. The testimony of Deputy Ingram that Petitioner admitted that he intended to masturbate in front of the children was sufficient to establish this element. Since the State was not required to prove that Petitioner actually committed the crime, the burglary conviction remained valid, and Petitioner has not shown that the trial court erred in denying this claim. Further, this claim essentially involves a question of *state* substantive criminal

7

law, and Petitioner has failed to cite to any United States Supreme Court decisions that were unreasonably applied in this case nor has he demonstrated any unreasonable determinations of facts; consequently, federal habeas corpus relief on this claim is not warranted.

C.   *Claim Two*

Petitioner argues that trial counsel was ineffective for failing to inform him that, if he testified at trial, the State "might be allowe[d] . . . to impeach him with [a] previously suppressed statement" given to Investigator Barbara Lens with the Seminole County Sheriff's Department. This claim was raised in Petitioner's Rule 3.850 motion and was denied on the basis that Petitioner failed to show prejudice: "The evidence against the Defendant was overwhelming. He was seen inside the house, followed, and caught at the gate of the community. One of the residents and a neighbor knew the Defendant from prior contacts. Also, the Defendant made some admissions to Deputy Ingram." (Appendix VIII, at 179.)

Petitioner's trial strategy rested on the possibility that the jury would treat his account of events as credible. In that regard, the decision to have Petitioner testify constituted a reasonable exercise of litigation strategy that is not subject to second-guessing in collateral proceedings.

Nevertheless, even if counsel's performance was in some manner deficient with regard to this matter, Petitioner still has not shown prejudice. The State's evidence in this case was very strong, and Petitioner has not shown that the outcome of the proceedings would have been different if he had not testified. Moreover, Investigator Lens' testimony in rebuttal was merely cumulative of Deputy Ingram's testimony. Investigator Lens testified

8

that "[Petitioner] said that his intention of being in that house in that bedroom in the child's bedroom was to masturbate in the presence of the children." (Appendix II, Transcript of Trial at 362.)

As such, Petitioner has not demonstrated that state court's denial of this claim was "contrary to, or involved an unreasonable application of, clearly established federal law" or was "based on an unreasonable determination of the facts in light of the evidence." 28 U.S.C. § 2254(d). As a result, Petitioner is not entitled to federal habeas relief on this claim.

### D. Claims Three and Five

Petitioner claims that trial counsel was ineffective for allowing Petitioner to dress in "county jail clothing during" voir dire and for failing to object to the trial court's requiring Petitioner to wear a stun belt during his trial. These claims were raised in Petitioner's Rule 3.850 motion and were denied on the basis that Petitioner had not shown prejudice.

At the rule 3.850 evidentiary hearing, Petitioner acknowledged that he never informed the trial court about any of his concerns relating to the stun belt. (Appendix IX at 41-42.) Moreover, under Florida law, the use of restraints is within the sound discretion of the trial court, *Weaver v. State,* 894 So. 2d 178, 193 (Fla. 2004), and Petitioner has not shown that the trial court abused its discretion as to the stun belt. Thus, Petitioner has not demonstrated that counsel acted deficiently. Further, aside from speculation, Petitioner fails to show any actual prejudice that resulted.

As to the jail clothing, prior to trial, Petitioner's counsel informed the trial court that, against counsel's advice, Petitioner had decided to go forward with the trial while wearing jail clothing. (Appendix III, Transcript of Trial at 5.) The trial court explained to Petitioner that the jury could infer that he was in prison if dressed in jail clothing, and Petitioner

decided to proceed in his jail attire. *Id*. at 7. Where, as here, a defendant chooses voluntarily to proceed to trial in this fashion despite admonitions from counsel and the trial court, there can be no showing that counsel acted deficiently. Additionally, Petitioner has not shown prejudice with regard to this matter. *See Mullins v. State*, 766 So. 2d 1136 (Fla. 2nd DCA 2000) (holding that, although "the trial court erred in denying the defense request to dress his witness in civilian clothing, we conclude from our review of the record that the error was harmless beyond a reasonable doubt.").

As such, Petitioner has not demonstrated that the state court's denial of these claims was either "contrary to" or an "unreasonable application of" *Strickland* or that the state court made an unreasonable determination of the facts in light of the evidence presented.

## E. Claim Four

Petitioner contends that trial counsel was ineffective for failing to challenge and preserve for appeal the manner in which the trial court addressed the jury's request to review the trial testimony of Deputy Ingram. This claim was raised in Petitioner's Rule 3.850 motion and was denied on the basis that Petitioner had not shown prejudice.

"It is well established that trial judges have broad discretion in deciding whether to read back testimony" to the jury. *Francis v. State,* 808 So. 2d 110, 130 (Fla. 2001). Petitioner has not shown that the trial court abused its discretion in this case or that counsel had a basis for raising an objection. Moreover, Petitioner has not shown any prejudice as a result of this matter. Further, Petitioner has not demonstrated that the state court's denial of this claim was either "contrary to" or an "unreasonable application of"

*Strickland* or the state court made an unreasonable determination of the facts in light of the evidence presented.

**F.    Claim Six**

Petitioner alleges that the trial court erred by denying his motion to suppress his confession. This claim relates to the statements he made to Deputy Ingram at the scene of the arrest.

The trial court held an evidentiary hearing on the motion to suppress, and Deputy Ingram testified that she had not asked Petitioner any questions; rather, she merely listened as Petitioner volunteered various explanations for his conduct. (Transcript of Evidentiary Hearing at 472-75.)  Accordingly, Petitioner's statement did not implicate *Miranda v. Arizona*, 384 U.S. 436 (1966).  In *Miranda*, the Supreme Court reiterated that "[v]olunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today." *Id.* at 478.  Thus, a spontaneous or volunteered statement of a suspect in custody is admissible despite the absence of prior *Miranda* warnings. *United States v. Booth*, 669 F.2d 1231, 1237 (9th Cir.1981). Because Petitioner's statements were voluntary, no *Miranda* violation occurred and the statements were properly admitted.

To the extent Petitioner has raised a Fourth Amendment challenge to his confessions, the Court notes that, in *Stone v. Powell*, 428 U.S. 465 (1976), the Supreme Court established as a general rule that criminal defendants may not seek collateral review of Fourth Amendment claims under section 2254. The Supreme Court declared that "where the State has provided an opportunity for full and fair litigation of a Fourth

Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id*. at 481. The Supreme Court based its decision on a concern for judicial economy, stating that the "justification [for the exclusionary rule] becomes minimal where . . . a prisoner . . . previously has been afforded the opportunity for full and fair consideration of his search-and-seizure claim at trial and on direct review. " *Id*. at 486.

In the instant case, *Stone* prevents Petitioner from raising a Fourth Amendment claim. The record reflects that Petitioner was afforded a full and fair opportunity to litigate and have adjudicated this claim in the state courts, and he should not be permitted to further relitigate the same issue. *See Harris v. Dugger*, 874 F.2d 756, 761 (11th Cir. 1989).

The Court further notes that Petitioner does not contend that he was denied the opportunity to present facts to the trial court or to argue the claim before an appellate court. Therefore, Petitioner's Fourth Amendment challenge must fail.

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1. The Amended Petition for Writ of Habeas Corpus (Doc. No. 11) filed by Gerardo Barragan is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

2. The Clerk of the Court shall enter judgment accordingly and is directed to close this case.

3. This Court should grant an application for certificate of appealability only if

the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Petitioner has failed to make a substantial showing of the denial of a constitutional right. Accordingly, a Certificate of Appealability is **DENIED** in this case.

**DONE AND ORDERED** in Orlando, Florida, this 28th day of April 2010.

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

Copies to:
sa 4/28
Counsel of Record
Gerardo Barragan